J. H. BRUSH v. THE CLARENDON LAND, INVESTMENT, AND AGENCY
COMPANY, LIMITED, ET AL.

No. 69.

**1. Construction of Contract—Exercise of Option—Want of Privity.**—Plaintiff company sued B. for the pasturage of cattle, and B. impleaded W., M., and A., as being joint owners with him of the cattle by virtue of a written agreement, which provided, "that in case B. buys" certain steer cattle, to be kept in plaintiff's pasture until ready for market and sold for account of said parties, "and after said steers are bought said B. shall execute to said W., M., and A. a contract for a three-quarter interest therein, * * * then the said W., M., and A. will execute a written agreement to said B. to jointly assume all liabilities of and to pay for a three-fourths interest in said steers," and after paying B. interest at 10 per cent per annum on three-fourths of the money invested in said cattle, to receive their proportionate share of profits, or pay their share of losses, if any thereon. B. after this agreement bought steer cattle and placed them for pasturage on plaintiff's ranch, but never offered to convey to W., M., and A. any interest therein. *Held:*

1. The agreement left it optional with B. whether he would convey any interest in the cattle to W., M., and A.; and having exercised the option by failing to make any such transfer, no interest in the cattle vested in the other three parties.

2. As B. alone made the contract with plaintiff for the pasturage of the cattle, he was alone liable therefor, there being no privity of contract between plaintiff ·and the other three parties.

2. **Agistment of Cattle — Liability only for Ordinary Care.—** Plaintiff, as agistor, was liable for ordinary care in looking after the cattle entrusted to it, and responsible for ordinary negligence in relation to them; and having bestowed upon them such care as would a reasonably prudent man upon his own property under similar circumstances, it was not liable for the loss of such as died from stress of weather.

3. **Conversion of Cattle Being Pastured.—**As plaintiff has set up no claim to 150 head of the cattle estimated to be still running in its pastures, it is held not liable to B. in this suit for the conversion of them.

APPEAL from Donley. Tried below before Hon. G. A. BROWN.

*James C. Scott* and *W. R. Butler*, for appellant.—Plaintiff was an agistor of defendant's cattle. It was bound to exercise reasonable care, and is liable to defendant for any losses occurring through negligence, by ·death of cattle or escape from its pasture, as well as by conversion of any of them. McAuley v. Harris, 71 Texas, 636–638; Haltey v. Markel, 44 Ill., *225–*228; Sargent v. Slack, 19 Am. Rep., 137–139; Winston v. Taylor, 75 Am. Dec., 112; 1 Add. on Torts, sec. 604; Bergstrom v. Franklin, 74 Texas, 40, 41; Schoul. on Bail., secs. 101–103, 106, 108.

*Browning & Madden*, for appellees.—1. White, Allan, McKinney, and Carhart were not parties to the contract between plaintiff company and defendant Brush, and therefore were improperly made parties to this suit; consequently the findings and judgment of the court in their favor are correct. Oglesby v. The State, 73 Texas, 658.

2. Plaintiff was required to exercise only reasonable care and diligence in the management of Brush's cattle, and was not an insurer of their safety. 92 Am. Dec., 182; 75 Am. Dec., 112; 69 Am. Dec., 444.

TARLTON, CHIEF JUSTICE.—December 13, 1888, the appellee company, as plaintiff, brought suit against J. H. Brush, D. H. White, W. A. Allan, A. S. McKinney, and L. H. Carhart as defendants. July 12, 1889, it dismissed its suit against the four persons last named, retaining J. H. Brush, appellant herein, as the sole defendant. Thereupon, at the instance of Brush, the parties against whom the dismissal was had were again made parties to the proceedings.

The plaintiff sued to recover of the defendant Brush the sum of $6525, besides interest, alleged to be due on a contract for the pasturage of certain cattle at the rate of $1.50 per head per annum. The items claimed to be due for pasturage were as follows: For 1900 head of cattle from August 1, 1886 (at which last named date the defendant sold and re-

moved about 675 head), $2850; on August 1, 1887, for pasturage on 1225 head, $1837.50; and August 1, 1888, $1837.50.

The defendant Brush, among other pleas (including a plea of payment of the first year's pasturage), filed a special plea or cross-bill against the plaintiff company and against the remaining persons made parties at his instance. His allegations were, briefly and substantially stated, that himself, White, Allan, and McKinney were the joint owners of 1400 head of *steer* cattle placed in the pasture of plaintiff, and that himself, L. II. Carhart, and W. A. Allan were the joint owners of 500 head of *stock* cattle there delivered; that a contract with the plaintiff company for the pasturage of the cattle was made between the plaintiff company and the parties named with reference to their several interests, and that these parties should be held to contribute to the payment of the pasturage, if any was due. He alleged, that on the delivery of the cattle to the plaintiff company, the latter undertook to perform the duties of an agistor with reference to them, and to take care of them with all reasonable diligence and attention; that in violation of its duty plaintiff had overstocked its pasture, and because of its willful and cruel negligence large numbers of the cattle were starved to death; that plaintiff had accounted for only 822 head of the cattle delivered to it; that the remainder, aggregating in value $24,382, had been lost through the willful negligence of the plaintiff or converted to its own use. The defendant prayed for relief in accordance with these allegations.

The court tried the case without a jury, and rendered judgment in favor of plaintiff against the defendant Brush for $1433.80, and in favor of White, Allan, McKinney, and Carhart against the cross-action of Brush; hence the latter has appealed to this court.

The defendant requested no special findings of fact by the trial court. We find in the record, however, the court's conclusions of law. Wherever, as in this case, there is on any issue a material conflict in the evidence, and no conclusions of fact are sought or found by the trial court, it becomes our duty to so interpret the testimony as to sustain the legal conclusions or the judgment appealed from. Applying this rule, we find the following conclusions of fact:

1. On May 5, 1885, J. H. Brush, B. H. White, A. S. McKinney, and W. A. Allan entered into the following agreement:

"It is agreed by and between J. H. Brush and B. H. White, A. S. McKinney, and W. A. Allan, that in case J. H. Brush buys from 1000 to 2000 one or two-year-old steers, to be kept on the Clarendon Land and Investment Agency Company's ranch in Donley County, Texas, till they are three years old, and then driven to market with the beef steers by said company, and to be sold by L. H. Carhart as agent for account of said parties, and after said steers are bought, the said Brush shall execute to said White, McKinney, and Allan a contract for a three-quarter in-

terest in said steers to be so kept and sold as above, then the said White, McKinney, and Allan will execute a written agreement to said Brush to jointly assume all liabilities of and pay for a three-fourths interest in said steers, and pay said Brush 10 per cent interest on the money invested in their part of said steers, to be computed annually; Brush to pay all transportation and other charges up to the time of the sale of the cattle, and to receive at the time of and from proceeds of sale of the steers the pay for said White, McKinney, and Allan's part of the cattle, and then they are to receive all proportionate gain over cost, charges, and interest on the transaction, or pay their proportionate of the loss, if any.

" Clarendon, May 5, 1885.

" J. H. BRUSH,
" B. H. WHITE,
"A. S. MCKINNEY,
" W. A. ALLAN."

2. Subsequently, during the summer of 1885, J. H. Brush, L. H. Carhart, and W. A. Allan entered into a verbal contract with reference to 500 head of stock cattle, the contract being in other respects of tenor similar to that of the preceding written agreement.

3. J. H. Brush bought with his own funds and delivered for pasturage to the plaintiff about 1900 head of cattle in May and June, 1885. He agreed to pay to the plaintiff for pasturage services the sum of $1.50 per head per annum. He and the plaintiff alone were parties to the contract of pasturage. All the cattle were kept in plaintiff's pasture until about the month of July, 1886, when the defendant Brush sold to different persons about 822 head. Before selling them he obtained the written consent of White, Allan, and McKinney with reference to the sale of such as were steer cattle, and of Allan and Carhart with reference to the sale of such as were stock cattle. This consent was given by the parties named, not because they claimed any interest in the cattle pastured or sold, but purely to accommodate Brush.

4. After the cattle were delivered to plaintiff for pasturage, Brush never made nor offered to make a bill of sale transferring a three-fourths interest in the cattle to the remaining parties named in the agreement above set out. The cattle, except the number sold and about 150 head which were in the pasture when this suit was instituted, died from stress of weather during the winter of 1885 and spring of 1886. This loss was not due to the negligence of plaintiff, which bestowed upon the cattle such care and prudence as would a reasonable person upon his property under similar circumstances. The 150 head of cattle referred to were held by the company subject to the demand and disposition of their owner Brush. The defendant Brush has never made any payment upon the amount due for pasturage; and a sufficient amount to cover the sum adjudged by the

court below is due for the pasturage of cattle before the sale and before the loss above referred to.

1. There was no privity of contract between the plaintiff and the parties to this suit other than the defendant Brush.

2. The defendant Brush is liable to the plaintiff, under his contract of pasturage, in the amount adjudged against him by the trial court.

3. The plaintiff, as an agistor, did not insure the safety of the animals entrusted to its care. It was held to ordinary care in looking after these animals, and is responsible for ordinary negligence with reference to them; and having bestowed such care upon them, it is not liable to the defendant Brush for their loss. Story on Bail., sec. 443.

4. As we interpret the contract between the defendant Brush and the remaining parties named in our first conclusion of fact, no interest in the cattle was to vest in these parties until Brush should execute in their behalf a contract transferring to them the interest specified in the agreement. The making of a bill of sale or contract conveying such interest is construed by us as a condition, a compliance with which on the part of Brush was necessary to beget liability on the part of the remaining parties to the agreement. The language of the contract, while quite obscure, and the circumstances under which it was executed, justify the conclusion that such an interpretation as we here state was intended by the parties. The contract left it quite within the option of Brush whether, in the first instance, he should buy the cattle at all, or in the second, whether he should transfer them to the remaining parties. This option he exerted by the purchase in the one case and the failure to transfer in the second. Anson on Con., 142.

5. As the cattle remaining in the pasture of the plaintiff were subject to the control and disposition of the defendant Brush, and as it does not appear that plaintiff has converted them, appellant is not entitled to a judgment for their value.

6. Of the 150 head of cattle referred to in our conclusion of fact number 4, 21 head have been sold by the appellee's manager pending this suit, by agreement of appellant and appellee. The proceeds, amounting to $420, have been deposited by the manager without prejudice to the parties to the suit. The judgment herein rendered is not to operate as a bar to the prosecution by appellant of any claim which he may have on account of the 150 head above mentioned, their proceeds, or value.

These conclusions, we think, dispose of the questions presented in appellant's several assignments of error.

The judgment is therefore in all things affirmed.

*Affirmed.*

Delivered January 31, 1893.